# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ANTONIO MILAN-RODRIGUEZ,<br><br>Petitioner,<br><br>v.<br><br>JEFFERSON B. SESSIONS,[1]<br><br>Respondent. | Case No. 1:16-cv-01578-AWI-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY RESPONDENT'S MOTION TO DISMISS AND DENY THE AMENDED PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DIRECTING CLERK OF COURT TO AMEND CAPTION<br><br>(ECF Nos. 20, 24) |

Petitioner is a federal immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of Mexico who was brought to the United States by his parents when he was approximately one year old. Petitioner was previously removed to Mexico in 2005, 2008, 2010, and 2013. (ECF No. 24-1 at 73, 75).[2] On June 4, 2013, Petitioner made a false claim

---

[1] Respondent relies on Rumsfeld v. Padilla, 542 U.S. 426, 435–36 (2004), for the proposition that only the warden having custody over Petitioner is the proper respondent in this action. (ECF No. 24 at 1 n.1). However, Padilla explicitly declined to resolve "the question whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation," 542 U.S. at 436 n.8, and no binding authority has since decided the issue. The Court finds that the Attorney General is a proper respondent. See Thai v. Ashcroft, 366 F.3d 790, 790 (9th Cir. 2004) (amending caption to reflect that the Attorney General was the proper respondent in habeas action that challenged an alien's detention). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Jefferson B. Sessions has been automatically substituted as Respondent in this matter.

[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

to United States citizenship at the San Ysidro port of entry. On October 21, 2013, Petitioner was convicted of a violation of 8 U.S.C. § 911. (Id. at 26).

On December 18, 2013, the Department of Homeland Security ("DHS") issued a notice to appear and charged Petitioner with being subject to removal for falsely representing himself to be a United States citizen to gain entry to the United States, in violation of section 212(a)(6)(C)(ii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(C)(ii). (ECF No. 24-1 at 96). On August 4, 2014, an immigration judge denied Petitioner relief from removal and ordered Petitioner removed to Mexico. (ECF No. 24-1 at 48). On November 20, 2014, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal. (Id. at 21–24). Petitioner has filed two petitions for review, which remain pending before the United States Court of Appeals for the Ninth Circuit. On February 26, 2015, the Ninth Circuit granted Petitioner a stay of removal. Order, Millan-Rodriguez v. Sessions, No. 14-73589 (9th Cir. Feb. 26, 2015), ECF No. 8.

Petitioner has been in the custody of U.S. Immigration and Customs Enforcement ("ICE") since December 3, 2013. (ECF No. 24-1 at 105). On January 6, 2016, Petitioner appeared via video teleconference for a Rodriguez[3] bond hearing. (ECF No. 24-1 at 88). Petitioner was granted additional time to prepare for the hearing, and on January 20, 2016, Petitioner and his wife testified in support of his request for release. (ECF No. 24-1 at 89, 73–82). At the conclusion of the hearing, the immigration judge did not reach the question of whether Petitioner was a danger to the community, but found Petitioner to be a flight risk and ordered that he remain detained. (ECF No. 24-1 at 85). On February 17, 2016, the immigration judge issued a written decision denying bond, finding that Petitioner was both a danger to the community and a flight risk. (Id. at 14–17). On April 21, 2016, the BIA dismissed Petitioner's appeal of the bond proceeding. (Id. at 11–12).

---

[3] Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), cert. granted sub nom. Jennings v. Rodriguez, 136 S. Ct. 2489, 195 L. Ed. 2d 821 (2016) (mem.). On October 3, 2017, the case was reargued. Docket for Case No. 15-1204, Supreme Court of the United States, https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/15-1204.html (last visited Dec. 19, 2017). Rodriguez III is controlling precedent in the Ninth Circuit until the Supreme Court issues its decision. Rodriguez is discussed in more detail in section II(B), infra.

On May 5, 2016, Petitioner filed a petition for review regarding denial of bond in the Ninth Circuit. (ECF No. 1). On October 19, 2016, the Ninth Circuit construed the petition for review as an original petition for writ of habeas corpus and transferred the matter to this Court. (ECF No. 4).

Meanwhile, on August 3, 2016, Petitioner received another Rodriguez bond hearing, which was continued to August 24, 2016 at the request of Petitioner. (ECF No. 24-1 at 65–66). At the end of the hearing, the immigration judge reserved his decision in light of the voluminous documentation. (Id. at 61–62). On September 15, 2016, the immigration judge found "no new material facts have emerged that materially alter this court's conclusion that [Petitioner] should be detained without bail." (ECF No. 24-1 at 8–9).

On February 10, 2017, Petitioner filed an amended petition wherein Petitioner asserts: (1) the immigration judge denied due process by failing to consider the length of Petitioner's detention when determining bond; (2) Petitioner was not provided comprehensive notice of his January 6 and August 3, 2016 bond hearings; (3) the immigration judge erroneously concluded that Petitioner's strong "family ties give him incentive not to appear" for removal; (4) Petitioner's prolonged detention violates the Eighth Amendment's prohibition against cruel and unusual punishment; (5) Petitioner's prolonged detention violates due process; (6) Petitioner's prolonged detention constitutes an increased penalty for his past convictions; (7) Petitioner's transfer to a facility in Louisiana violated his substantive due process rights and jeopardizes his parental rights; and (8) loss of filial and parental consortium. (ECF No. 20 at 17–30).

On April 24, 2017, Respondent filed a motion to dismiss. (ECF No. 24). Petitioner has filed an opposition. (ECF No. 27). Per the Court's order, the parties also filed supplemental briefing on Petitioner's claims arising from his transfer to Louisiana. (ECF Nos. 33–35).

## II.

## DISCUSSION

### A. Jurisdiction

"[A] federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review [immigration] bond hearing determinations for constitutional claims and legal error." Singh v.

Holder, 638 F.3d 1196, 1200 (9th Cir. 2011) (citing Demore v. Kim, 538 U.S. 510, 516–17 (2003)). "Although [8 U.S.C.] § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." Singh, 638 F.3d at 1202. Therefore, to the extent that the motion to dismiss asserts that this Court lacks jurisdiction over the petition, the motion should be denied.

**B. Due Process Claims**

In Petitioner's first, second, third, and fifth claims for relief, Petitioner asserts due process violations stemming from his bond hearings, deficient notices, and prolonged detention. (ECF No. 20 at 17, 24, 27).

1. Immigration Bond Hearings

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). "[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" Rodriguez v. Robbins (Rodriguez II), 715 F.3d 1127, 1134 (9th Cir. 2013) (quoting Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010)).

The authority to detain a noncitizen whose removal has been stayed by a court of appeals pending its disposition of his petition for review is found in 8 U.S.C. § 1226(a). Prieto-Romero, 534 F.3d at 1059. Section 1226(a) provides in pertinent part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—

4

      (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General;

      or

      (B) conditional parole;

8 U.S.C. § 1226(a).

      In <u>Casas-Castrillon v. Department of Homeland Security</u> (<u>Casas</u>), 535 F.3d 942 (9th Cir. 2008), the Ninth Circuit construed § 1226(a) as requiring a hearing and individualized determination for a noncitizen subjected to prolonged detention as to whether continued detention is necessary based on dangerousness or flight risk. <u>Casas</u>, 535 F.3d at 951. Subsequently, in <u>Diouf v. Napolitano</u> (<u>Diouf II</u>), 634 F.3d 1081 (9th Cir. 2011), the Ninth Circuit found that a noncitizen's "detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months." 634 F.3d at 1092 n.13. In <u>Singh v. Holder</u>, 638 F.3d 1196 (9th Cir. 2011), the Ninth Circuit provided guidance as to the procedural requirements for the bond hearings. Specifically, "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." <u>Id.</u> at 1208. Due process also requires a contemporaneous record of the bond hearings, such as a transcript or audio recording. <u>Id.</u>

      In the <u>Rodriguez</u> class action, noncitizens "challenge[d] their prolonged detention pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention." <u>Rodriguez III</u>, 804 F.3d at 1065. In <u>Rodriguez II</u>, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is implicitly time-limited and expires after six months. Thereafter, the government's authority to detain shifts to § 1226(a), which requires a bond hearing governed by the procedural requirements set forth in <u>Singh</u>. <u>Rodriguez II</u>, 715 F.3d at 1138–44. In <u>Rodriguez III</u>, the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" <u>Rodriguez III</u>, 804 F.3d at 1089 (quoting <u>Diouf II</u>, 634 F.3d at 1091).

To determine whether a noncitizen detained under § 1226(a) presents a flight risk or a danger to the community, immigration judges should consider the factors set forth in In re Guerra, 24 I. & N. Dec. 37 (B.I.A. 2006). Singh, 638 F.3d at 1206. The Ninth Circuit has held that immigration judges are required to consider restrictions short of incarceration in addition to the length of time the noncitizen has already been detained. Rodriguez III, 804 F.3d at 1087–89. Due process violations in immigration proceedings are subject to harmless error review. Prieto-Romero, 534 F.3d at 1066 (citing Getachew v. INS, 25 F.3d 841, 845 (9th Cir. 1994)).

    2.   Lack of "Comprehensive Record"

In the amended petition, Petitioner contests the constitutionality of his bond hearings. Petitioner asserts that the immigration judge erred in denying bond "without a comprehensive record." (ECF No. 20 at 13). To support this assertion, Petitioner directs the Court's attention to: (1) the immigration judge incorrectly stating that a judge in Los Angeles denied Petitioner's asylum application when in fact the asylum proceedings were conducted in Florence, Arizona; and (2) the immigration judge discovering at the January 20, 2016 hearing that ICE did not reinstate Petitioner's prior removal order.

Petitioner fails to demonstrate how he was prejudiced. See Prieto-Romero, 534 F.3d at 1066 (subjecting due process violations in immigration proceedings to harmless error review). The fact that the immigration judge incorrectly stated that a judge in Los Angeles, rather than in Florence, denied Petitioner's asylum application had no bearing on the bond determination. Additionally, the immigration judge's realization at the January 20, 2016 hearing that ICE did not reinstate Petitioner's prior removal order for illegal reentry had no bearing on the bond determination. "When an alien has unlawfully reentered the United States after being subject to a prior order of removal, the INA allows the government to reinstate the prior order of removal rather than undertake removal proceedings a second time." Morales de Soto v. Lynch, 824 F.3d 822, 825 (9th Cir. 2016) (citing 8 U.S.C. § 1231(a)(5)). Here, the government elected to undertake removal proceedings a second time and charged Petitioner with being subject to removal for falsely representing himself to be a United States citizen to gain entry to the United States. Petitioner does not explain how the immigration judge's realization at the January hearing

that the government did not reinstate the prior removal order affected the bond determination. Accordingly, Petitioner is not entitled to habeas relief based on this ground.

### 3. Transcript Errors

Petitioner asserts there are errors in the transcript of the January hearing. (ECF No. 20 at 14). Petitioner specifies two discrepancies between the transcript provided by the immigration court and one transcribed by GMRTranscription.com. The discrepancies concern the discussion of the reinstatement of Petitioner's previous removal order. First, the GMR transcript is not in the record before this Court. Second, as discussed *supra*, the fact that ICE did not reinstate Petitioner's previous removal order had no bearing on the bond determination. Therefore, Petitioner fails to demonstrate how he was prejudiced by the alleged transcript errors. See Prieto-Romero, 534 F.3d at 1066. Accordingly, Petitioner is not entitled to habeas relief on this ground.

### 4. Failure to Consider Length of Detention

In his first claim for relief, Petitioner asserts that he was denied due process because the immigration judge did not explicitly state that the length of Petitioner's detention was considered in the bond determination. (ECF No. 20 at 17). The Ninth Circuit has held that an immigration judge "must consider the length of time for which a non-citizen has already been detained" when determining bond. Rodriguez III, 804 F.3d at 1089.

In the memorandum decision dated September 15, 2016, the immigration judge noted that Petitioner had previously sought bond pursuant to Rodriguez and that Petitioner's second Rodriguez hearing occurred on August 24, 2016. Further, the immigration judge specifically noted that "the mere passage of time also does not persuade the court that [Petitioner] poses any less of a poor bail risk." (ECF No. 24-1 at 8–9). Accordingly, the Court finds that the immigration judge considered the length of Petitioner's detention in the bond determination. See Gomez-Ochoa v. Lynch, No. CV-16-01646-PHX-JJT (BSB), 2017 WL 913597, at *9 (D. Ariz. Feb. 8, 2017) (finding consideration of length of petitioner's detention when immigration judge discussed Rodriguez III requirement that bond hearing must be held after petitioner has been detained for more than six months). Based on the foregoing, Petitioner is not entitled to habeas relief on his first claim, and it should be denied.

### 5. Notice

In his second claim for relief, Petitioner asserts that he was denied due process by not being provided comprehensive notice of his January 6, 2016 and August 3, 2016 bond hearings. (ECF No. 20 at 24). Petitioner fails to demonstrate how he was prejudiced by the alleged lack of notice for these hearings. See Prieto-Romero, 534 F.3d at 1066. Petitioner was granted continuances so that he could have adequate time to prepare for the hearings, and the immigration judge personally notified Petitioner of the time and date of the continued hearings. (ECF No. 24-1 at 66, 89). Accordingly, Petitioner is not entitled to habeas relief on his second claim, and it should be denied.

### 6. Conclusion Regarding Family Ties

In his third claim for relief, Petitioner challenges the immigration judge's conclusion that Petitioner's strong family ties in the United States give Petitioner incentive not to appear for removal. (ECF No. 20 at 25). "An Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations. The Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable." Guerra, 24 I. & N. Dec. at 40. See Singh, 638 F.3d at 1206 (applying analysis in Guerra to hearings held under Casas on related points of law). The Ninth Circuit has recognized that "[a]s an alien's hopes of setting aside a removal order fade, the risk of flight may increase." Diouf II, 624 F.3d at 1088. Here, the immigration judge acknowledged Petitioner's long odds for relief, and found that Petitioner's strong ties to family, who reside in the United States, give him incentive not to appear for removal. The Court finds the immigration judge's conclusion was not unreasonable. Accordingly, Petitioner is not entitled to habeas relief on his third claim, and it should be denied.

### 7. Prolonged Detention

In his fifth claim for relief, Petitioner asserts that his prolonged detention violates the Due Process Clause. (ECF No. 20 at 27). In support of this argument, Petitioner appears to rely on Zadvydas v. Davis, 533 U.S. 678 (2001), and Demore v. Kim, 538 U.S. 510 (2003).

Zadvydas concerned 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period. The Supreme Court held that § 1231(a)(6) does not authorize indefinite

detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Here, the Ninth Circuit has stayed Petitioner's removal pending its review of the removal order. As the Ninth Circuit has not issued a final order, the removal period has not commenced. 8 U.S.C. § 1231(a)(1)(B)(ii). Further, unlike the Zadvydas petitioners whose "removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country," Petitioner "is not stuck in a 'removable-but-unremoveable limbo.'" Prieto-Romero, 534 F.3d at 1062, 1063 (citing Zadvydas, 533 U.S. at 684–86). Petitioner does not allege that Mexico lacks a repatriation treaty with the United States or that Mexico will refuse to accept him in the event Petitioner is unsuccessful in challenging his removal. In fact, Petitioner previously has been removed to Mexico. (ECF No. 24-1 at 73, 75).

Demore concerned 8 U.S.C. § 1226(c), which proscribes mandatory detention for noncitizens convicted of certain crimes. In upholding mandatory detention under § 1226(c), the Supreme Court affirmed its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Demore, 538 U.S. at 526. Demore distinguished Zadvydas by "stress[ing] that detention under § 1226(c) has 'a definite termination point' and typically 'lasts for less than the 90 days we considered presumptively valid in Zadvydas.'" Rodriguez III, 804 F.3d at 1068 (quoting Demore, 538 U.S. at 529). Here, however, Petitioner is being detained pursuant to § 1226(a).

Prolonged detention is not per se unconstitutional. Rather, "prolonged detention *without adequate procedural protections* would raise serious constitutional concerns." Casas, 535 F.3d at 950 (emphasis added). As discussed above, Petitioner has received adequate procedural protections. Accordingly, Petitioner is not entitled to habeas relief on his fifth claim, and it should be denied.

**C. Eighth Amendment Claim**

In his fourth and sixth claims for relief, Petitioner asserts that his prolonged detention constitutes an "increased penalty for [his] past convictions" and is sufficiently punitive to trigger a constitutional proportionality review under the Eighth Amendment. (ECF No. 20 at 27, 25).

9

Courts have consistently recognized that the removal process is a civil proceeding and not criminal punishment. See INS v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984) ("A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry . . . ."); Agyeman v. INS, 296 F.3d 871, 886 (9th Cir. 2002) ("It is well established that deportation proceedings are civil, rather than criminal, in nature."). Petitioner is not entitled to habeas relief on the ground that his immigration detention constitutes an increased penalty for his past convictions and violates the Eighth Amendment's prohibition against cruel and unusual punishment. Accordingly, Petitioner's fourth and sixth claims should be denied.

### D. Parental Rights Claims

Petitioner's seventh and eighth claims for relief concern his parental rights. In his seventh claim for relief, Petitioner asserts that his transfer to a detention facility in Louisiana violated his substantive due process rights and jeopardized his parental rights. Petitioner "alleges that his transfer disrupted the family integrity and inadvertently denied him visitation from his family and children." (ECF No. 20 at 28). In his eighth claim for relief, Petitioner alleges "loss of filial and parental consortium actually and proximately caused by his prolonged detention." (ECF No. 20 at 30). Respondent argues that these claims are moot because Petitioner is currently located at a facility where his family can visit him and he can defend his parental rights. Further, the Attorney General's decision as to the appropriate detention facility is discretionary and not subject to judicial review. (ECF No. 34 at 1–2).

From April 15, 2015 to September 22, 2016, Petitioner was detained at the Mesa Verde Detention Facility in Bakersfield, California, where he received periodic visits from his family and children. (ECF No. 20 at 28; ECF No. 24-1 at 105). Petitioner was then transferred to the Pine Prairie Correctional Center in Pine Prairie, Louisiana, where he remained until March 30, 2017. Thereafter, Petitioner was transferred back to the Mesa Verde Detention Facility, where he is currently detained. (ECF No. 24-1 at 105).

While Petitioner's removal proceeding was ongoing, Petitioner's wife filed for divorce. (ECF No. 20 at 71–74; ECF No. 33 at 4). A mandatory trial setting and settlement conference was scheduled for April 19, 2017, approximately twenty days after Petitioner was transferred

back to Bakersfield. (ECF No. 27 at 44–45; ECF No. 33 at 4). Although Petitioner wrote at least two letters to ICE officials regarding the mandatory trial setting and settlement conference, Petitioner did not appear for the conference on April 19, 2017, and allegedly did not appear a second time.[4] (ECF No. 27 at 39–41; ECF No. 33 at 4). On May 24, 2017, a judgment of dissolution was entered in the Orange County Superior Court Lamoreaux Justice Center. (ECF No. 33 at 25). The judgment states that the contested dissolution proceeding was heard on May 11, 2017, and that both parties were present in court. (Id. at 26). Attached to the judgment was a child custody order, which awarded legal and physical custody to Petitioner's wife. (Id. at 28).

In his supplemental brief, Petitioner states that since the Court's August 4, 2017 order for supplemental briefing, there has been compliance with ICE's directive entitled "Facilitating Parental Interests in the Course of Civil Immigration Enforcement Activities."[5] For example, Petitioner has been assisted with a telephonic appearance for a mediation appointment and provided transportation to a court date at the Lamoreaux Justice Center where the judge vacated the prior order terminating Petitioner's parental rights. (ECF No. 33 at 5).

1. Mootness

Article III of the United States Constitution limits the jurisdiction of federal courts to "actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings," which "means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis, 494 U.S. at 477).

Respondent argues that Petitioner's claims regarding the transfer are moot because Petitioner is currently located at a facility where his family can visit him and he can defend his

---

[4] It is unclear when Petitioner did not appear a second time. Petitioner states that it occurred exactly four days after Petitioner filed his surreply brief with the Court. (ECF No. 33 at 4). It is not clear to the Court what document Petitioner is referencing.

[5] United States Immigration and Customs Enforcement Directive 11064.1, Facilitating Parental Interests in the Course of Civil Immigration Enforcement Activities (Aug. 23, 2013), available at https://www.ice.gov/doclib/detention-reform/pdf/parental_interest_directive_signed.pdf (last visited Dec. 19, 2017).

11

parental rights. (ECF No. 34 at 2–3). The standard the Supreme Court has "announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (quoting United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203 (1968)). Here, the voluntary cessation exception applies because the allegedly wrongful behavior—transfer to a distant facility that purportedly interferes with the right to family integrity—could occur at any time, and the government has offered no assurance that Petitioner will not be transferred. See Diouf II, 634 F.3d at 1084 n.3.

    2. Jurisdiction

Respondent also argues that the Attorney General's authority under 8 U.S.C. § 1231(g)(1) to determine the appropriate place of detention is discretionary and not subject to judicial review. (ECF No. 34 at 3). In support of this argument, Respondent cites to, *inter alia*, Rios-Berrios v. INS, 776 F.2d 859 (9th Cir. 1985). In Rios-Berrios, the petitioner was apprehended in California, charged with entry without inspection, and moved to Florida for a deportation hearing that was scheduled to begin effectively five working days from the time of his apprehension. The immigration judge twice continued the hearing for a total of two working days, first after the petitioner stated that he needed time to find an attorney and again after being informed that the petitioner had called a friend who had been in contact with an attorney and bail bondsman. After the immigration judge granted the continuances, he also advised that the hearing would proceed with or without counsel. When the petitioner appeared without counsel, there was no inquiry regarding the petitioner's expressed wish to be represented by counsel and the hearing went forward. Rios-Berrios, 776 F.2d at 860–61.

The Ninth Circuit found a violation of the petitioner's right to be represented by counsel of his own choice at his own expense, holding that the immigration judge's grant of continuances, "which amounted to little more than two working days' time, was an abuse of discretion," given that "[t]he petitioner was in custody, spoke only Spanish, had limited

education, was unfamiliar with this county and its legal procedures, and had been removed nearly 3,000 miles from his only friend in this country." Rios-Berrios, 776 F.2d at 862–63. However, the Ninth Circuit clarified:

> We wish to make ourselves clear. We are not saying that the petitioner should not have been transported to Florida. That is within the province of the Attorney General to decide. 8 U.S.C. § 1252(c). We merely say that his transfer there, combined with the unexplained haste in beginning deportation proceedings, combined with the fact of petitioner's incarceration, his inability to speak English, and his lack of friends in this country, demanded more than lip service to the right of counsel declared in statute and agency regulations, a right obviously intended for the benefit of aliens in petitioner's position.

Rios-Berrios, 776 F.2d at 863.

Also instructive are two subsequent Ninth Circuit cases concerning injunction requests to restrict the Attorney General's discretion to choose appropriate places for detention on the basis that transfers to remote immigration detention facilities effectively deprived the plaintiffs of the right to counsel. In Committee of Central American Refugees v. INS (CRECE), 795 F.2d 1434 (9th Cir.), amended by 807 F.2d 769 (9th Cir. 1986), the Ninth Circuit affirmed the district court's denial of a preliminary injunction to prohibit the transfer of members of a class of deportable aliens out of the San Francisco district and to direct the transfer of named individuals detained elsewhere back to the San Francisco district. The Ninth Circuit found that the class did not have a fair chance of success on the merits because "plaintiffs' transfers did not interfere with any established attorney-client relationship. Nor has it yet been shown that the transfers effectively denied access to counsel." Id., 807 F.2d at 770. Conversely, in Orantes-Hernandez v. Thornburgh, 919 F.2d 549 (9th Cir. 1990), the Ninth Circuit affirmed the district court's permanent injunction that imposed certain limitations[6] on the Attorney General's discretion to transfer detainees. The Ninth Circuit distinguished CRECE, noting that the plaintiffs had shown interference in established attorney-client relationships. Id. at 566.

---

[6] In pertinent part, the district court ordered that "Defendants shall not transfer detained class members who are unrepresented by counsel from the district of their apprehension for at least seven (7) days to afford class members the opportunity to obtain counsel." Orantes-Hernandez v. Meese, 685 F. Supp. 1488, 1513 (C.D. Cal. 1988).

13

The Court does not question that the Attorney General has discretion to determine the appropriate place of detention. Based on the foregoing Ninth Circuit decisions, however, the Court may review claims that the Attorney General's exercise of discretion resulted in the deprivation of a constitutional or statutory right. Accordingly, the Court finds that it has jurisdiction to address Petitioner's claims.

3. Analysis

The Court has been unable to find a Ninth Circuit case that addresses the specific issue of whether immigration detention and transfers violate the substantive due process right to family integrity. However, there is a First Circuit case that the Court finds instructive and persuasive. Aguilar v. U.S. Immigration & Customs Enforcement Division of the Department of Homeland Security, 510 F.3d 1 (1st Cir. 2007), involved hundreds of undocumented aliens who were detained following a raid on a factory in Massachusetts. Due to a shortage of bed space in Massachusetts, ICE transported a substantial number of the detainees to distant locations, such as Texas. Id. at 6. The Aguilar class alleged that ICE's actions violated, *inter alia*, their substantive due process rights of family integrity and of parents to make decisions as to the care, custody, and control of their children. Id. at 7, 18–19. In finding that there was no violation of the class's substantive due process rights, the First Circuit stated:

> Our thinking is influenced by a realization that the evenhanded enforcement of the immigration laws, in and of itself, cannot conceivably be held to violate substantive due process. *See Payne–Barahona*, 474 F.3d at 2; *de Robles v. INS*, 485 F.2d 100, 102 (10th Cir. 1973). Any interference with the right to family integrity alleged here was incidental to the government's legitimate interest in effectuating detentions pending the removal of persons illegally in the country. *See Demore*, 538 U.S. at 523, 123 S.Ct. 1708 (recognizing "detention during deportation proceedings as a constitutionally valid aspect of the deportation process").
>
> This is critically important because every such detention of a parent, like every lawful arrest of a parent, runs the risk of interfering in some way with the parent's ability to care for his or her children. *See Payne–Barahona*, 474 F.3d at 3. That a detention has an impact on the cohesiveness of a family unit is an inevitable concomitant of the deprivation of liberty inherent in the detention itself. So long as the detention is lawful, that so-called deprivation of the right to family integrity does not violate the Constitution.
>
> We hold, therefore, that such an incidental interference, standing alone, is not of constitutional magnitude. To rule otherwise would risk turning every lawful detention or arrest of a parent into a substantive due process claim. That would

> place new and unprecedented constraints on law enforcement activities. Such constraints would be unwarranted.
>
> . . .
>
> We see the matter this way. Although the interest of parents in the care, custody, and control of their offspring is among the most venerable of the liberty interests protected by the Fifth Amendment, *see, e.g., Troxel*, 530 U.S. at 65, 120 S.Ct. 2054; *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 20 (1st Cir. 2001), the petitioners have not demonstrated that this guarantee of substantive due process encompasses their assertions. After all, the right to family integrity has been recognized in only a narrow subset of circumstances.
>
> To be sure, the petitioners cite cursorily to cases that deal with this right but they conspicuously fail to build any bridge between these cases and the facts that they allege. We do not think that this is an accident. The petitioners' claims seem markedly different from those scenarios that courts heretofore have recognized under the rubric of family integrity. They have not alleged that the government has interfered permanently with their custodial rights. *See, e.g., Stanley v. Illinois*, 405 U.S. 645, 649, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Nor have they alleged that the government has meddled with their right to make fundamental decisions regarding their children's education, *see, e.g., Meyer v. Nebraska*, 262 U.S. 390, 400, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), or religious affiliation, *see, e.g., Wisconsin v. Yoder*, 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Taken most favorably to the petitioners, the interference alleged here is transitory in nature and in no way impinges on parental prerogatives to direct the upbringing of their children.
>
> We have scoured the case law for any authority suggesting that claims similar to those asserted here are actionable under the substantive component of the Due Process Clause, and we have found none. That chasm is important because, given the scarcity of "guideposts for responsible decisionmaking in this unchartered area," courts must be "reluctant to expand the concept of substantive due process." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).

Id. at 22–24 (footnote omitted).

While the First Circuit applies the "shocks the conscience" test with respect to substantive due process rights involving family integrity, Aguilar, 510 F.3d at 21–22, the Ninth Circuit has issued conflicting decisions regarding the standard it applies. Compare Marsh v. Cty. of San Diego, 680 F.3d 1148, 1154 (9th Cir. 2012) (To violate the "well-established substantive due process right to family integrity," "the alleged conduct must 'shock[] the conscience' and 'offend the community's sense of fair play and decency.'") with Crowe v. Cty. of San Diego, 608 F.3d 406, 441 n.23 (9th Cir. 2010) ("The standard for deprivation of familial companionship is 'unwarranted interference,' not conduct which 'shocks the conscience.'"). Regardless of the

governing standard, the Court finds that a conclusion different from Aguilar is not warranted.

As discussed *supra*, Petitioner's detention is lawful. There is nothing in the record to indicate that Petitioner's transfer was irregular or anything other than an ordinary incident of immigration detention. Additionally, like the petitioners in Aguilar, Petitioner's "claims seem markedly different from those scenarios that courts heretofore have recognized under the rubric of family integrity." 510 F.3d at 23. In support of his claim, Petitioner cites to Supreme Court cases that acknowledge that "[t]he integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment," Stanley v. Illinois, 405 U.S. 645, 651 (1972), and recognize the "liberty interest . . . of parents in the care, custody, and control of their children," Troxel v. Granville, 530 U.S. 57, 65 (2000). However, the facts and holdings of these cases are far removed from the claims raised by Petitioner in the instant petition. Stanley concerned an unwed father whose children became wards of the state upon the death of their mother based on a conclusive presumption that unwed fathers are unfit to raise their children. 405 U.S. at 646–47. The Supreme Court held that due process required "a hearing on [Stanley's] fitness as a parent before his children were taken from him and that, by denying him a hearing and extending it to all other parents whose custody of their children is challenged, the State denied Stanley the equal protection of the laws." Id. at 649. Troxel found unconstitutional a state statute that "in practical effect" authorized a court to "disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." 530 U.S. at 67.

The Court recognizes the burden Petitioner's immigration proceedings and prolonged detention has placed on his family and is sympathetic to his situation. However, no authority has been presented to this Court that holds an immigration detainee has a due process right to be placed in a facility near his family in order to facilitate visitation. Petitioner was placed in Louisiana for approximately six months and has since been transferred back to a facility in Bakersfield where his family had previously been able to visit him. Additionally, Petitioner has

not alleged that government action resulted in termination of his parental rights[7] or interfered with his right to make fundamental decisions regarding his children's upbringing. Following Aguilar, incidental interference with Petitioner's familial relationship due to lawful immigration detention does not warrant habeas relief or a transfer to a detention facility in Orange County, California.

## III.

## RECOMMENDATION AND ORDER

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss (ECF No. 24) be DENIED; and
2. The amended petition for writ of habeas corpus (ECF No. 20) be DENIED.

Further, the Clerk of Court is DIRECTED to amend the caption in this matter to reflect the name of Jefferson B. Sessions as Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may

///
///
///
///

---

[7] As discussed in section IV(D), *supra*, attached to Petitioner's marriage dissolution judgment was a child custody order, which awarded legal and physical custody to Petitioner's wife. (ECF No. 33 at 28). However, the custody order was subsequently vacated. (ECF No. 33 at 5).

waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 12, 2018**

_____
UNITED STATES MAGISTRATE JUDGE